IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Hayward L. Rogers, #278510,      )  Civil Action No.:2:12-1858-TMC-BHH
                           )
                Petitioner,  )
                           )  **REPORT AND RECOMMENDATION**
      v.                   )  **OF MAGISTRATE JUDGE**
                           )
Leroy Cartledge,            )
                           )
            Respondent.  )

      The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court upon several motions: (a) Respondent's Motion for Summary Judgment (Dkt. No. 43; see also Dkt. No. 42; Dkt. No. 45); (b) Petitioner's Motion to Dismiss (Dkt. No. 31); (c) Petitioner's Motion to Amend/Correct Petition (Dkt. No. 51); and (d) Petitioner's Motion to Amend/Correct Response in Opposition (Dkt. No. 53).

      Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

      The Petitioner brought this habeas action on or about June 28, 2012. (Dkt. No. 1.) On or about September 24, 2012, Petitioner filed a Motion to Dismiss, stating that he "moves to dismiss all grounds for relief raised in his habeas petition except the grounds raised in his petition for writ of certiorari, and the grounds raised in his post-conviction case without prejudice." (Dkt. No. 31.) On October 29, 2012, Respondent moved for summary judgment. (Dkt. No. 43; see also Dkt. No. 42; Dkt. No. 45.) By order filed October 30, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 44.) Petitioner filed several documents responsive to the Motion for Summary Judgment. (See Dkt. No. 46; Dkt. No. 47; Dkt. No. 48; Dkt. No. 54; Dkt. No. 56.)

On or about November 19, 2012, Petitioner filed a Motion to Amend his Petition. (See Dkt. No. 51.) In that motion, Petitioner stated that he "has exhausted state remedies in post-conviction case 2010-CP-32-3792" and therefore "moves to amend [the instant habeas case] with the exhausted claims that w[ere] amended to his petition." (Dkt. No. 51 at 1 of 2.) A few days later, Petitioner filed a Motion to Amend his Response in Opposition to the Motion for Summary Judgment. (Dkt. No. 53.) Petitioner stated in that motion that he wished to amend his Response in Opposition in order to "submit[] exculpatory discovery in support of his claim" that trial counsel was ineffective "for failing to request that a qualified interpreter be appointed prior to trial." (Dkt. No. 53 at 1 of 2.)

## PROCEDURAL HISTORY

The Petitioner is currently confined at McCormick Correctional Institution. In February of 1999, the Lexington County Grand Jury indicted Petitioner for two counts of first degree criminal sexual conduct (CSC) (1999-GS-32-815 and 1999-GS-32-818), kidnapping (1999-GS-32-813), strong armed robbery (1999-GS-32-814), and assault and battery with intent to kill (ABWIK) (1999-GS-32-819). (R. at 990-1020.) The Petitioner was represented by William Rast, Esquire. A jury trial was held on September 17-21, 2001, before the Honorable Marc H. Westbrook. (R. at 1-903.) The jury convicted Petitioner as charged, and Judge Westbrook sentenced Petitioner as follows: (a) to life without the possibility of parole for kidnapping; (b) to life without the possibility of parole for ABWIK; (c) life without the possibility of parole for each CSC conviction; and (d) fifteen years of incarceration for strong arm robbery. (R. at 887-88, 901-02.) Judge Westbrook indicated that the sentences would run concurrently. (R. at 902.)

Petitioner appealed and was represented on appeal by Wanda Haile, Esquire, Senior Assistant Appellate Defender with the South Carolina Office of Appellate Defense. (R. at 915-17.) In his Final Brief of Appellant, Petitioner raised the following issues:

> I. The lower court erred in failing to supply an interpreter for the victim witness during the solicitor's direct examination of said witness.

II. The lower court erred in failing to supply the victim witness with a qualified interpreter when the defense cross-examined said witness.

III. The lower court erred in denying appellant's motion for a mistrial after learning of juror misconduct via their reading of newspaper articles about the case during the trial.

IV. The lower court erred in admitting the victim's purse into evidence at trial.

V. The lower court erred in allowing fingerprint results into evidence due to the defective chain of custody connected to the evidence.

VI. The lower court erred in sentencing appellant to life without parole via a prior most serious offense which was too remote in time for consideration in the case.

(Dkt. No. 42-8 at 20 of 161; R. at 920.) On August 9, 2004, the South Carolina Court of Appeals issued an opinion affirming the convictions. (Dkt. No. 42-8 at 67-71 of 161; R. at 969-73; see State v. Rogers, 361 S.C. 178, 603 S.E.2d 910 (Ct. App. 2004).)

On or about October 27, 2004, Petitioner filed an application for post-conviction relief ("PCR"). (Dkt. No. 42-8 at 74-78 of 161; R. at 976-80.) In his application, he raised the following claims:

1. Ineffective assistance of trial counsel.

2. Ineffective assistance of appellate counsel.

3. "Conviction obtained by evidence obtained by unconstitutional search and seizure."

4. "Conviction by unlawful arrest."

5. "Failure to disclose evidence favorable to defendant.

6. "Denial of impartial jury."

7. "Denial of impartial judge."

8. "Denial of speedy trial."

9. "Denial of due process of a fair trial."

3

(Dkt. No. 42-8 at 75 of 161; R. at 977.)

On August 19, 2008, Petitioner, through his attorney Tara Dawn Shurling, filed an Amended Application for Post-Conviction Relief. (Dkt. No. 42-8 at 86 of 161; R. at 988.) In that Amended Application, Petitioner raised the following specific allegations of ineffective assistance of counsel:

> 1) Trial counsel was ineffective for failing to require that a certified interpreter be sworn to take the victim's testimony;
>
> 2) Trial counsel was ineffective for failing to challenge the sufficiency of the search warrant used to draw the Applicant's blood;
>
> 3) Trial counsel was ineffective for failing to challenge the chain of custody on the Applicant's blood;
>
> 4) Trial counsel was ineffective for failing to use readily available experts, funds for whom had already been obtained by previous defense counsel, in the Applicant's defense at trial.

(Dkt. No. 42-8 at 86 of 161; R. at 988.)

On May 18, 2009, an evidentiary hearing was held before the Honorable Roger M. Young, Sr. (R. at 1077-1158.) Petitioner was present and represented by Tara Shurling, Esquire. In an order dated August 18, 2009, Judge Young denied the application for post-conviction relief and dismissed the petition. (R. at 1163-83.)

On September 4, 2009, Ms. Shurling filed a Motion to Alter or Amend pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. In that motion, Petitioner stated,

> At the evidentiary hearing convened in this case, the Applicant alleged that appellate counsel was ineffective for failing to brief on direct appeal his arguments raised at trial that his speedy trial rights were violated by the extensive pre-trial delay in this case and that Judge Westbrook should have recused himself from the trial of this case. The arguments were not addressed or ruled upon by the Court in the Order of Dismissal.

(R. at 1185.) Petitioner asked the court to reconsider its Order of Dismissal and grant him post-conviction relief. (Id.) Petitioner also submitted a *pro se* "Motion to Amend Rule 59(e), S.C.R.C.P. Motion to Alter or Amend." (R. at 1189.) Judge Young denied one of the Motions

4

to Alter or Amend in an order signed September 28, 2009. (R. at 1192.) On October 26, 2009, Judge Young entered an order denying both the *pro se* motion and the motion filed by counsel. (R. at 1193.)

Petitioner served and filed a Notice of Appeal. (R. at 1194-95.) On February 22, 2011, Tara Shurling, Esquire, filed a Petition for Writ of Certiorari. (Dkt. No. 45-7.) In that Petition, Petitioner raised the following issues:

> I. Did the lower court err in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that Defense Counsel failed to take adequate measures prior to, and during, the victim's testimony. Specifically, trial counsel was ineffective for:
>
>> (1) failing to interview the victim prior to the trial;
>>
>> (2) failing to request that a qualified interpreter be appointed, prior to trial, to interpret the victim's testimony; and
>>
>> (3) for failing to move for a mistrial once defense counsel discovered that the victim's impediment was far more severe than had been disclosed pretrial.

(Dkt. No. 45-7.) The State filed a Return to the Petition; Petitioner filed a Reply. (See Dkt. No. 45-8; Dkt. No. 45-9.)

On June 8, 2012, the South Carolina Supreme Court issued an order denying the Petition for Writ of Certiorari. (Dkt. No. 45-10.) On June 15, 2012, Petitioner filed a Petition for Rehearing. (Dkt. No. 45-11.) The South Carolina Supreme Court denied the Petition for Rehearing on August 23, 2012. (Dkt. No. 45-12.) The matter was remitted to the lower court on August 23, 2012. (Dkt. No. 45-13.)

Meanwhile, on or about September 3, 2010, Petitioner filed a second application for post-conviction relief. (Dkt. No. 45-14.) On December 10, 2010, the State filed a Return and Motion to Dismiss, contending the application was successive to the prior PCR application and was filed after the statute of limitations had expired. (See Dkt. No. 45-15.) On March 11, 2011, the Honorable R. Knox McMahon entered a Conditional Order of Dismissal. (Dkt.

No. 45-16.) Petitioner subsequently filed a "Return to Conditional Order of Dismissal and Reasons Why Application Should Not Be Dismissed." (Dkt. No. 45-17.) On January 4, 2012, Judge McMahon's Final Order of Dismissal was filed. (Dkt. No. 45-18.) Petitioner filed a Motion to Alter or Amend; the handwritten date on the corresponding Certificate of Service is January 11, 2012. (Dkt. No. 45-19.)

The Petitioner then filed the instant habeas action raising the following grounds for review (verbatim):

**Ground One**: Trial counsel was ineffective for failing to require that a certified interpreter be sworn to take the victims testimony on direct exam, did the failure to appoint an interpreter for Petitioner violated his right to due process of law under the 5th and 14th Amendments and his right of confrontation under the 6th Amend? At the P.C.R. hearing trial counsel testified that prior to trial he had been informed by the solicitor that the victims possible impediment to testifying was that she had trouble speaking. Importantly defense counsel was not told that the victim had trouble hearing. Trial counsel asked the solicitor about having an interpreter for the victims testimony at trial, but he was reassured on numerous occasions that the victim would be capable of testifying at trial. However, counsel did not take any action, prior to trial, and did not move to have an interpreter appoint. Petitioner was denied due process and fundamental fairness.

**Ground Two**: The lower court erred by denying Petitioner due process and the right of confrontation.
**Supporting Facts:** Defense counsel and solicitor knew before trial that witness had trouble speaking and was deaf, but trial counsel did not move for a pretrial ruling to be determined if the victim will be capable of giving reliable testimony. This resulted in a constructive denial of my ability to cross-examine the victim and denied me due process and fundamental fairness, thus, neither the court, defense counsel, or solicitor conducted an inquiry into victim's or Petitioner's need for an interpreter.

**Ground Three**: Counsel was ineffective for failing to make a motion for a mistrial once it became clear that victim was deaf and her condition was not disclosed pretrial.
**Supporting facts**: Once it became obvious the solicitor could not get the victims testimony on the record without repeated use of leading questions, defense counsel should have asked for a ruling on victims ability to offer reliable testimony, and should have made a motion for a mistrial based upon the solicitor's failure to disclose pretrial that the victim was deaf. The defense did not know victim was deaf until the middle of the trial.

6

**Ground Four**: Defense counsel was ineffective for failing to take adequate measures prior to, and during the victims testimony.

**Ground Five**: Trial counsel was ineffective for failing to challenge the sufficiency of the search warrant used to draw the Applicant's blood. (was amended by P.C.R. counsel and argued at P.C.R. hearing and ruled on in the order of dismissal and proposed order).

**Supporting Facts:** I was interrogated a number of times by the West Columbia police without being advised of my right to remain silent, and I was denied my right to counsel when I repeatedly requested for counsel and was refused, instead I was threaten and intimidated with questions about a robbery and rape. During one of the interrogations, without having a Schmerber hearing, without a search warrant or court order, by force over my objections blood was taken unlawfully in violation of my 4th, 5th, and 14th Amends. to the Constitution. . . . Petitioner was denied due process and fundamental fairness where counsel was ineffective for failing to take numerous actions with regard to the victims testimony, including: (1) failing to interview the victim prior to trial; (2) failing to request that a qualified interpreter be appointed, prior to trial to determine the need for an interpreter to interpret the victims testimony; (3) failing to move for a mistrial once counsel discovered the victim's impediment was far more severe than had been disclosed pretrial.

**Ground Six**: Trial counsel was ineffective for failing to challenge the chain of custody on the Applicant's blood. (amended by P.C.R. counsel, argued at P.C.R. hearing, and proposed order, and ruled on in dismissal order.) State failed to establish sufficient foundation to admit results of applicant's D.N.A. analysis. The nurse that drew the applicant's blood failed to testify at the applicant's trial, and failed to submit an affidavit of the qualification of the doctor or nurse that drew the applicant's blood, and the process was not at a medical facility. Blood and urine samples must be obtained by physicians licensed by the State Board of Medical Examiners, registered nurses licensed by the State Board of Nursing, and other medical personnel trained to obtain the samples in a licensed medical facility. The State showed no proof as to the qualification of who drew the applicant's blood. . . .

**Ground Seven:** Trial counsel was ineffective for failing to challenge the chain of custody on the victim's purse, and sweater, and dress that was admitted into evidence at trial. . . . On the morning after the incident in question, Det. Wendy Frazier testified at the trial that she was instructed to return these items before being tested because the items contained no evidentiary value. These items remained at the victims home for a week before Frazier was agin instructed to return to the victim's home and reclaim these items, where subsequently the items was introduced at trial without a proper chain of custody.

**Ground Eight**: Appellate counsel was ineffective for failing to argue on direct review that Defendant/Applicant was entitled to a new trial based on the fact that Defendant/Applicant speedy trial rights were violated.

**Ground Nine**: Appellate counsel was ineffective for failing to argue on direct review that Judge Westbrook should have recused himself from the trial of this case.

**Ground Ten**: Appellate counsel was ineffective for failing to argue on direct review that Defendant/Applicant's motion for a directed verdict was improperly denied by the trial court. . . .

**Ground Eleven**: Appellate counsel was ineffective for failing to argue on direct review introduction of the fingerprint testimony (was objected to at trial).

**Ground Twelve**: Appellate counsel was ineffective for failing to argue on direct review introduction of the blood testimony. . . .

**Ground Thirteen**: Appellate counsel was ineffective for failing to argue on direct review admission of the dress and sweater (objected to at trial). . . .

**Ground Fourteen**: Appellate counsel was ineffective for failing to argue on direct review the admission of the pocketbook and the items contained in the pocketbook . . . .

**Ground Fifteen**: <u>Conflict of Interest</u>, the State Supreme Court erred in failing to dismiss appellate counsel from denial of Applicant's post-conviction proceeding even though both partys filed a motion to relieve counsel. The applicant showed a strong argument in that some of his issues is meritorious and the results of the proceedings would have been different had appellate counsel preserved these issues to be ruled on by the state's highest court. Thus, appellate again represented petitioner under a conflict of interest as appellate counsel was being investigated by the State Supreme Court Office of Disciplinary Counsel.

**Ground Sixteen**: The Court err in sentencing Petitioner to a sentence exceeding the maximum authorized by law, denying due process and fundamental fairness.
**Supporting Facts**: The Petitioner was sentenced to life without parole via a prior most serious which was too remote in time and over ten years old and violating recidivist statute, and the separation of powers doctrine S.C. Code Ann. 16-1-60 and S.C. Code Ann. 24-21-640, as the prior used assault and battery with intent to kill was not classified at the time.

**Ground Seventeen**: The court err in sentencing the petitioner to assault and battery with intent where the lower court lacked subject matter jurisdiction to try defendant for assault and battery with intent to kill.

**Supporting Facts**: The State Grand Jury indicted the petitioner for assault with intent to kill. During trial, and without objections by defense counsel, the solicitor amended the indictment by adding the words "and battery," changing the indictment to assault and battery with intent to kill without presentment by the grand jury, changing the nature of the offense, and increasing the punishment. (as trial counsel deliberately refused to argue this issue at trial, P.C.R. counsel also refused to raise it, I had no choice but to file another P.C.R. regarding the issue. . . . )

**Ground Eighteen**: The lower court err by denying the petitioner the right to a jury hearing the evidence to his L.W.O.P. sentence denying petitioner due process and fundamental fairness.

**Supporting Facts**: After the petitioner was found guilty the trial court dismissed the jury, at that time the solicitor sought the L.W.O.P. sentence without a jury hearing the evidence. In Apprendi v. New Jersey, our U.S. Supreme Court held that any fact of a prior conviction that increases the otherwise applicable statutory maximum sentence must be submitted to a jury making a finding beyond a reasonable doubt . . . . .

**Ground Nineteen**: The court err by denying petitioner's motion for discovery.

**Supporting Facts:** Prior to trial, Elizabeth C. Fullwood and Katherine H. Hudgins filed motion for discovery for the defense which the State failed to provide, and trial counsel failed to compel[,] denying petitioner due process and fundamental fairness. . . .

**Ground Twenty**: Trial counsel was ineffective for failing to conduct a proper pre-trial investigation.

**Supporting Facts**: Defense counsel failed to conduct any pre-trial investigation and ineffective for failing to use readily available experts, funds for whom had already been obtained by previous defense counsel, in the petitioner's defense at trial. Counsel testified at the P.C.R. hearing that he did not conduct a[n] investigation because he was told the case was ready for trial. [H]e did not say why he did not use readily available experts, denying the petitioner due process and fundamental fairness.

**Ground Twenty One**: Denial right to be fully heard.

**Supporting Facts**: A[n] affidavit was submitted and filed with the Supreme Court along with newly discovered evidence to be fully heard to properly exhaust his remedies because none of his appointed counsel would properly argue the issues or preserve them for appellate review. The Court refused to entertain the motion, of hear the newly discovered evidence.

**Ground Twenty Two**: Actual innocence.

9

**Supporting Facts**: Has solicitor and defense counsel not suppressed discovery of SLED's D.N.A. results, and discovery of the grand jury, and had not suppressed exclusionary evidence derived from an illegal search and seizure the results at trial would have been different. . . .

**Ground Twenty Three**: Prosecutorial misconduct, and actual innocence; Brady violation.

**Supporting Facts**: Solicitor and defense counsel suppressed D.N.A. which results found the petitioner's DNA did not match in the case, instead of producing SLED's DNA results the solicitor lied to the court by saying that SLED just went on line with a new process of during D.N.A. with the smallest amount of a sample and this time he got a match. Trial counsel went along with this and they got P.C.R. counsel to go along with it, the discovery was not submitted at my trial, on direct appeal, P.C.R. hearing, and was not included in the Appendix to Petition for Writ of Certiorari . . . .

(Dkt. No. 1.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

10

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v. Pruett, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

## DISCUSSION

On or about September 26, 2012, Petitioner filed a Motion to Dismiss. (Dkt. No. 31.) In that motion, Petitioner stated that he "moves to dismiss all grounds for relief raised in his habeas petition except the grounds raised in his petition for writ of certiorari, and the grounds raised in his post-conviction case without prejudice." (Dkt. No. 31.) The Motion to Dismiss referenced PCR case number 2004-CP-32-3932. (Id.)

Respondent filed a Motion for Summary Judgment on October 29, 2012. (Dkt. No. 42.) In his Memorandum in Support of his Motion for Summary Judgment, Respondent stated that while the Motion to Dismiss (Dkt. No. 31) remained pending, "Respondent has only addressed the ineffectiveness claims that Rogers indicated that he wishes to pursue in his motion to dismiss." (Dkt. No. 42 at 16 of 41.)

There appears to be some confusion over the meaning of Petitioner's Motion to Dismiss, as in a document dated November 2, 2012, Petitioner stated (verbatim),

> The Petitioner moves to amend his return opposing Respondent's Motion for Summary Judgment, on the grounds that his motion to dismiss filed 9/28/12 motion to dismiss grounds for relief was only intended for post-conviction case number 2010-CP-32-3792, which is now pending on appeal in the State Supreme Court. The Petitioner clearly desires that all issues raised and amended to his exhausted P.C.R. case No. 2004-CP-3932, and ruled on in the dismissal order, be fully adjudicated in his petition for habeas corpus.

(Dkt. No. 47.)

On or about November 19, 2012, Petitioner filed a "Motion to Amend Petition to Include all Exhausted Claims." (Dkt. No. 51.) In this motion, Petitioner states that he seeks to amend his habeas petition because he "has exhausted state remedies in post-conviction case No. 2010-CP-32-3792 / Appellate Case No. 2012-213116, Rogers v. State." (Dkt. No. 51 at 1 of 2.) Petitioner "moves to amend [the habeas case] with the exhausted claims." (Id.)

On or about November 20, 2012, Petitioner filed a Motion "to Amend Return and Response to Respondent's Motion for Summary Judgment." (Dkt. No. 53.) In this motion, Petitioner moves "moves to amend his return and response to the Respondent's motion for summary judgment by submitting exculpatory evidence in support of his claim" that "trial counsel was ineffective for failing to request that a qualified interpreter be appointed prior to trial." (Dkt. No. 53 at 1 of 2.)

12

On or about November 26, 2012, Petitioner filed an "Amended Response to Respondent's Motion for Summary Judgment." (Dkt. No. 54.)

It is not entirely clear at this point, after Petitioner's numerous filings, which grounds he seeks to assert in the instant habeas petition. The undersigned will begin by addressing the claims it is clear Petitioner intends to assert–the claims Petitioner asserted in his first PCR claim and subsequently raised in the corresponding petition for writ of certiorari. The undersigned will then address the remaining claims set forth in Petitioner's habeas petition. (See Dkt. No. 1.)

### A. Trial Counsel Was Ineffective for Failing to Interview the Victim Prior to Trial

At the PCR hearing, Petitioner–through counsel–alleged that trial counsel was ineffective for failing to interview the victim prior to trial. (R. at 1156.) Petitioner's counsel stated,

> [Trial counsel] had been informed, at least to some degree, that the witness had some hearing and speech problems. And while I can certainly understand his willingness to take the prosecution's word on some level for her ability to communicate, I think the prudent thing to do would have been to have personally interviewed her, at least briefly, to ascertain the degree to which she was capable of answering and understanding questions.

(R. at 1156.) Similarly, in the instant habeas petition, Petitioner claims that trial counsel was ineffective for, *inter alia*, failing to "move for a pretrial ruling to . . . determine[] if the victim [would] be capable of giving reliable testimony." (Dkt. No. 1 at 6-7 of 26.) Petitioner complains that his trial counsel "did not take any action prior to trial." (Dkt. No. 1 at 5 of 26.)

The PCR court addressed this claim but addressed it in conjunction with other claims related to the victim's testimony: "failure to take adequate measures prior to, and during, [the] victim's testimony." (R. at 1167.)

The PCR court summarized trial counsel's testimony as follows:

13

Trial counsel testified that he was not aware that the victim in this case was deaf until trial. Counsel further testified that he had several conversations with the solicitor, and was never informed that the victim was deaf. Counsel stated that he had indication that the victim could not *speak* clearly but was assured by the Solicitor that the witness would be able to testify clearly at trial so he did not make a motion for an interpreter prior to trial. Further, counsel testified that he did not interview the victim prior to trial to ascertain the extent of her impediment because he believed the solicitor was being entirely truthful with him.

Counsel testified that when he found out during trial that the victim could not adequately testify, he objected. He testified that during the victim's direct testimony he repeatedly objected to the solicitor's overtly leading questions, but did not make a motion for an interpreter at that time because the victim had not given any indication that she could not hear or sufficiently communicate. He asserted that he attempted to raise the interpreter issue at that time, but that the Solicitor stated the victim "spoke her own language" and recommended that her sister be interpreter. Counsel further testified that he objected to [the] sister acting as the interpreter because she was also a witness in the trial, and that as a result, the judge instead allowed the victim's son to act as her interpreter. Counsel testified that he again contested the use of a family member as the interpreter, and asked for a qualified interpreter, but was unsuccessful due to the assertion that the victim "spoke her own language."

Applicant's PCR Counsel asked if Trial Counsel ever considered filing a motion for a mistrial on the grounds that the information concerning the victim's lack of hearing was <u>Brady</u> material. Counsel testified that he did not consider it, but as he did not believe there was any real evidence of rape, it would not have changed his strategy of proceeding to trial.

(R. at 1168-69.)[1]

In rejecting Petitioner's claim of ineffective assistance of counsel, the PCR judge

stated,

With respect to this claim, this Court finds that trial counsel's conduct does not fall below the objective standard of reasonableness. This Court finds Trial Counsel's testimony that he was assured prior to the trial that the victim could adequately communicate to be credible. In addition, the record reflects that when it became obvious the victim had difficulty communicating, Trial Counsel first objected to the State's leading questions (Tr. p. 145, line 24 – p. 146, line 18), and subsequently reiterated that objection on several

---

[1]Pages 1169 and 1170 of the record are missing from the entry at docket number 42 but are attached to the habeas petition at docket number 1. (<u>See</u> Dkt. No. 42-9 at 101-02 of 124; <u>see also</u> Dkt. No. 1-1 at 169-70 of 203.)

occasions. The transcript also reflects that Trial Counsel then moved for an interpreter. (Tr. p. 185, line 5 – p. 201, line 12). This Court finds that these actions fall within the broad range of reasonable professional competence required in the legal profession. As such, this Court finds that the Applicant has failed to prove the first prong of the <u>Strickland</u> analysis, which is that his attorney provided representation below an objective standard of reasonableness.

 This Court also finds that the Applicant has failed to prove the second prong of the <u>Strickland</u> analysis, which is prejudice. If it is to be believed that the victim became deaf at an early age and was never taught sign language, as was testified to at the PCR Hearing, it would have been exceedingly difficult to find a qualified interpreter of any kind who could adequately communicate with her. Ultimately, the Court would have still had to turn to the victim's family for assistance. South Carolina courts have recognized the ability of family members to serve as interpreters in similar circumstances. *See* <u>State v. Rogers</u>, 361 S.C. 178, 603 S.E.2d 910 (Ct. App. 2004) (court allowed son to act as interpreter for witness, finding it was in the best interests of justice where son and sister were only two people who could interpret the witness's unique method of communication) . . . .

(R. at 1168-69.)

The undersigned recommends granting Respondent's Motion for Summary Judgment on this claim of ineffective assistance of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), states that a meritorious ineffective assistance of counsel claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. <u>Id</u>. at 687–96. A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. <u>Id</u>. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. <u>Id</u>. (internal quotation marks and citation omitted); <u>see also Bowie v. Branker</u>, 512 F.3d 112, 119 n.8 (4th Cir. 2008); <u>Fields v. Att'y Gen. of Md.</u>, 956 F.2d 1290, 1297–99 (4th Cir. 1992); <u>Roach v. Martin</u>, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of

Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id. While Strickland itself is a deferential standard, when both § 2254(d) and Strickland apply, "review is doubly" deferential. Harrington v. Richter, 131 S.Ct. 770, 788 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S.Ct. at 788.

At the PCR hearing, trial counsel testified as follows:

Q. Now, you said you don't remember specifically your discussions with the defendant. Do you remember if you told the defendant prior to trial that the victim was deaf?

A. I didn't know she was deaf. I knew she had a problem talking by looking at the discovery. I had three or four separate conversations with Drayton Riddle [the prosecutor] about whether or not she was going to be able to testify. Mr. Riddle assured me, yes, he talked to her in the office, she could testify, that was not going to be a problem. He assured me that before trial. At trial, I found out different.

Q. Now, at what point during the trial did you find that out?

A. During the direct examination when he was trying to ask her questions.

Q. And did you make an objection at that point?

A. Yes, I did. And that's when Judge Westbrook decided Mr. Riddle ask all questions that can be answered yes or no because she says yes and no real clear. Her testimony was so bad that Coconut, who was the court reporter, could not take down her testimony.

. . . .

Q. Now, did it become apparent at some point that there was going to be an interpreter needed?

A. I raised that issue several times with Judge Westbrook that there is a statute that stated how we were supposed to do this. And the problem, the

way I understand it, is she did not give any legitimate sign language or any other legitimate deaf speaking. She spoke her own little language.

(Dkt. No. 42-9 at 62-64 of 124; R. at 1127-29.)

The PCR court credited trial counsel's testimony that he "was assured prior to the trial that the victim could adequately communicate." (R. at 1169.) While trial counsel determined *at trial* that the victim had difficulty communicating, the factual finding that trial counsel "was assured prior to the trial that the victim could adequately communicate" is "presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has the "burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003). He has not done so. In any event, Petitioner cannot establish any prejudice as a result of counsel's failure to interview the victim prior to trial. Even if counsel had interviewed the victim prior to trial, there is no "reasonable probability" that "the result of the proceeding would have been different" because all the evidence in the record support's counsel's testimony that the victim "spoke her own little language." Strickland, 466 U.S. at 694; see also R. at 1129. Speaking with the victim prior to trial would not have changed the victim's method of communication, and, as the PCR court noted, "it would have been exceedingly difficult to find a qualified interpreter of any kind who could adequately communicate with her," and the trial court "[u]ltimately . . . would have still had to turn to the victim's family for assistance." (R. at 1169.) Because the state court's determination of the issue is not contrary to, or an unreasonable application of, clearly established federal law–or an unreasonable determination of the facts–the undersigned recommends granting summary judgment to Respondent on this claim.

17

**B. Trial Counsel Was Ineffective for Failing to Request that a Qualified Interpreter Be Appointed, Prior to Trial, to Interpret the Victim's Testimony**

Respondent is entitled to summary judgment on this claim of ineffective assistance counsel for substantially the same reason as the previous claim. As described above, trial counsel had been assured on numerous occasions that the victim could communicate well enough to testify and counsel was thus unaware that an interpreter might be needed. Regardless, any failure to request a qualified interpreter prior to trial caused no prejudice to Petitioner. The victim "spoke her own little language," and–as explained by the PCR court–it would have been "exceedingly difficult to find a qualified interpreter of any kind who could adequately communicate with [the victim]." (R. at 1169.) The PCR court concluded that "[u]ltimately, the [trial c]ourt would still have had to turn to the victim's family for assistance" in interpreting the victim's testimony. (R. at 1169.) Furthermore, it is worth noting that counsel *did* request an interpreter at the beginning of his cross-examination. (R. at 184-87.) Trial counsel requested an interpreter pursuant to the procedure set forth in the South Carolina Code, but Judge Westbrook rejected that request. (R. at 193-203.) Judge Westbrook also said on the record that he saw "no other way" for the victim to be able to testify other than allowing the victim's son to serve as an interpreter. (R. at 202.) In short, it appears that, even if trial counsel had requested an interpreter prior to trial, the result would have been the same, as there was no other interpreter qualified to interpret the victim's "own little language." The undersigned therefore recommends granting summary judgment to Respondent on this claim.

**C. Trial Counsel Was Ineffective for Failing to Move for a Mistrial Once Defense Counsel Discovered the Extent of the Victim's Impediment**

The PCR court addressed this claim under the heading "Failure to Take Adequate Measures Prior to, and During, Victim's Testimony." (See R. at 1167-70.) In addition to the passages set forth above, the PCR court's order states, *inter alia*,

18

> Applicant's PCR Counsel asked if Trial Counsel ever considered filing a motion for a mistrial on the grounds that the information concerning the victim's lack of hearing was <u>Brady</u> material. Counsel testified that he did not consider it, but as he did not believe there was any real evidence of rape, it would not have changed his strategy of proceeding to trial.
>
> . . . .
>
> Additionally, trial counsel testified that even if he had thought about making a motion for mistrial because of the alleged misleading by the State, it would not have changed his strategy because he believed there was no real evidence of rape. As such, this Court finds that the Applicant is also unable to prove prejudice.

(R. at 1169-70.)

In his Motion for Summary Judgment, Respondent seeks summary judgment on this claim, "submit[ting] that the state courts' rejection of this claim was . . . neither 'contrary to' or an[] 'unreasonable application of' clearly established United States Supreme Court precedent." (Dkt. No. 42 at 38.) Respondent states,

> There simply is no United States Supreme Court precedent mandating a mistrial under materially indistinguishable circumstances. *Vasquez [v. Kirkland]*, 572 F.3d [1029,] 1038 [9th Cir. 2009]. Also, Rogers has not demonstrated how the victim's deafness is either materially exculpatory or impeaching evidence under *Brady*. . . .

(Dkt. No. 42 at 38.) Respondent contends that the information about the victim simply was not <u>Brady</u> material for two reasons: (1) <u>Brady</u> does not apply when counsel could have learned the information upon a pretrial interview with the victim, and (2) "there is nothing about a handicapped victim's impairments that is either materially exculpatory or impeaching under *Brady*." (Dkt. No. 42 at 38-39 & n.11.) Respondent further asserts that Petitioner suffered no prejudice as a result of counsel's failure to make a motion for mistrial. (Dkt. No. 42 at 39-40.) Respondent "would note that there was no infringement of the right to confrontation, and there was already a great deal of evidence impeaching the victim's testimony, such that the jury could properly assess her credibility and Rogers' counsel could adequately argue lack of credibility." (Dkt. No. 42 at 40.)

The instant case is similar to the Ninth Circuit case of Vasquez v. Kirkland, 572 F.3d 1029 (9th Cir. 2009). In Vasquez, the Ninth Circuit affirmed the district court's denial of habeas relief where the petitioner alleged that he was denied his Sixth Amendment rights under the Confrontation Clause "because he was unable to effectively cross-examine the prosecution's key witness," who was deaf, unable to speak, and never learned a standard sign language. Vasquez, 572 F.3d at 1031. The Ninth Circuit stated, "Vasquez is . . . unable to point us to any case in which the Supreme Court found a violation of a defendant's Confrontation Clause rights where the limitations on the effectiveness of cross-examination resulted from the witness's own physical impairments." Vasquez, 572 F.3d at 1036. The court concluded "[t]he Supreme Court case that presents a factual situation closest to the present case is United States v. Owens, 484 U.S. 554 (1987)." Vasquez, 572 F.3d at 1037. Rejecting the claim, the Ninth Circuit stated,

> Here, as in Owens, the trial court provided the defendant the opportunity for effective cross-examination: the trial court placed no limits on the scope or duration of cross-examination. Moreover, Zapata testified under oath and the jury was able to observe her demeanor in order to assess her credibility. We empathize with the challenges that defense counsel faced in cross-examining Zapata. Those challenges, however, do not rise to a deprivation of the *opportunity* for effective cross-examination. Defense counsel could question Zapata about the shooting and about her identification of Vasquez. The jury, having been instructed as to the nature of the intermediary interpretation process, could observe the difficulties that the interpreters encountered in communicating counsel's questions and interpreting the gestures and signs that Zapata gave in response, and weigh the value of Zapata's testimony accordingly. Thus, like the defendant in Owens, Vasquez had ample opportunity "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." Davis, 415 U.S. at 318, 94 S.Ct. 1105. In fact, Vasquez's opportunity for effective cross-examination exceeded that in Owens, where the witness's memory impairment left no possibility that defense counsel could cross examine the witness about the attack or his identification of the defendant. Here, by contrast, Zapata clearly remembered the shooting and her prior identification of Vasquez, but had difficulty communicating what she remembered.
> Because there is no factually analogous Supreme Court decision finding a confrontation clause violation on the basis of the witness's own

physical impairments, the California Court of Appeal's decision affirming Vasquez's conviction is not contrary to a Supreme Court decision with materially indistinguishable facts. See Lambert, 393 F.3d at 974. In addition, because the trial court imposed no limitations that obstructed Vasquez's opportunity to effectively cross-examine Zapata, the California Court of Appeal did not unreasonably apply Supreme Court precedent. See Lockyer, 538 U.S. at 75, 123 S.Ct. 1166; see also Owens, 484 U.S. at 559, 108 S.Ct. 838.

Vasquez, 572 F.3d at 1038. The Ninth Circuit therefore affirmed the district court's denial of the petition for a writ of habeas corpus. Id. at 1038-39.

The state court's rejection of Petitioner's claim is not contrary to, or an unreasonable application of, clearly established federal law. Although the instant claim is a claim of ineffective assistance of counsel–and the claim at issue in Vasquez was a claim that rights pursuant to the Confrontation Clause were violated–the principles of Vasquez are applicable in the case *sub judice*. As the court in Vasquez noted, no Supreme Court precedent has "found a violation of a defendant's Confrontation Clause rights where the limitations on the effectiveness of a cross-examination resulted from the witness's own physical impairments." Vasquez, 572 F.3d at 1036.

In addition, while trial counsel did not move for a mistrial, trial counsel did object to the prosecution's leading questions; that objection was overruled. And at the beginning of cross-examination of the witness, trial counsel moved for an interpreter pursuant to the South Carolina Code; that request was denied. In fact, as the PCR court found, "it would have been exceedingly difficult to find a qualified interpreter of any kind who could adequately communicate" with the victim, and "[u]ltimately, the Court would still have had to turn to the victim's family for assistance." (R. at 1169.) In short, it is unclear how trial counsel's failure to move for a mistrial prejudiced Petitioner; even if a mistrial had been granted, the victim's impediment would have remained at a retrial. Because the state

21

court's analysis of this claim does not meet the standard set forth in § 2254, the undersigned recommends granting summary judgment to Respondent on this claim.

### D. Grounds Five through Fourteen; Ground Twenty

Respondent contends that he is entitled to summary judgment on Grounds Five through Ground Fourteen and Grand Twenty because they are procedurally barred. (See Dkt. No. 49.) The undersigned agrees. None of these ineffective assistance of counsel claims were raised in the Petition for Writ of Certiorari. As such, these claims are procedurally barred. See Longworth v. Ozmint, 377 F.3d 437, 447-48 (4th Cir. 2004) (concluding that certain grounds are "procedurally defaulted as a result of [the petitioner's] failure to raise them in his petition for certiorari to the South Carolina Supreme Court for review of the State PCR Court's decision"); see also Ward v. McLeod, No. 3:01-0012-25BC, 2002 WL 31996018, at *4 (D.S.C. Apr. 18, 2002) ("When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.").

"Federal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice." Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008) (quoting McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000)); see also Coleman v. Thompson, 501 U.S. 722, 750 (1991).[2] Pursuant to Martinez v. Ryan, 132 S. Ct. 1309,

---

[2]In the alternative for showing cause and prejudice, a petitioner must demonstrate a miscarriage of justice, e.g., actual innocence. Bousley v. United States, 523 U.S. 614, 623 (1998). Petitioner has not met that standard. Schlup v. Delo, 513 U.S. 298, 327 (1995).

1315 (2012), "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." However, the holding in <u>Martinez</u> does not apply to the instant claim, as the holding "does not concern attorney errors in . . . appeals from initial-review collateral proceedings." <u>Martinez</u>, 132 S. Ct. at 1320. Petitioner has not shown cause and actual prejudice, nor has he shown that failure to consider these claims will result in a fundamental miscarriage of justice. Accordingly, the undersigned recommends granting summary judgment to Respondent on Grounds Five through Fourteen and Ground Twenty.

### E. Ground Fifteen

In Ground Fifteen, Petitioner contends that the South Carolina Supreme Court erred in "failing to dismiss appellate counsel from denial of Applicant's post-conviction proceeding" even though both Petitioner and his counsel filed a motion to relieve counsel. Petitioner further contends that he was represented despite the attorney's conflict of interest, as she "was being investigated by the State Supreme Court Office of Disciplinary Counsel."

Presumably Petitioner is referring to his PCR counsel, Tara Shurling. The record of the PCR hearing reflects that, while Petitioner had previously been unhappy with Ms. Shurling's representation, he expressed satisfaction with her performance on the day of the hearing. (R. at 1082-85.) It appears, however, that Ground Fifteen is based on Ms. Shurling's refusal to present certain issues in the Petition for Writ of Certiorari. (<u>See</u> Dkt. No. 1-1 at 76-77 of 203.) In a letter dated September 13, 2010, Ms. Shurling stated,

> As your attorney, I believe that the only issue that stands a chance of winning on appeal is the interpreter issue. *I strongly feel that this is a meritorious issue, and I strongly feel that you should be granted a new trial on that issue*. However, I do not feel that your remaining issues, including your numerous arguments about the police taking your blood, stand any chance of winning on appeal.

23

(Dkt. No. 1-1 at 76 of 203.) When Ms. Shurling could not reach an agreement with Petitioner on which issues to raise, she filed a Motion to Be Relieved as Counsel. (Dkt. No. 1-1 at 88-90 of 203.) That motion was denied on October 20, 2010. (Dkt. No. 1-1 at 91 of 203.) By November 16, 2010, Petitioner had filed a complaint against Ms. Shurling with the Supreme Court of South Carolina Office of Disciplinary Counsel. (Dkt. No. 1-1 at 81-82 of 203.)

In an Order dated December 16, 2010, the South Carolina Supreme Court noted that both Ms. Shurling and Petitioner had "once again filed motions seeking to terminate Ms. Shurling's representation" of Petitioner. (Dkt. No. 1-1 at 83 of 203.) The court's order stated, *inter alia*,

> Petitioner may proceed <u>pro se</u> or with Ms. Shurling as counsel. Substitute counsel will not be appointed to represent petitioner in this matter, as we find he has failed to show satisfactory cause for relieving Ms. Shurling and having other counsel appointed. . . . [I]n response to petitioner's contention that Ms. Shurling will not raise certain issues in the petition for a writ of certiorari and Ms. Shurling's contention that petitioner's insistence upon raising non-meritorious issues has placed her in a bind, we would like to emphasize to petitioner that Ms. Shurling has no duty to raise every non-frivolous issue presented by the record, but is allowed to exercise reasonable professional judgment in determining what issues to present to this Court. . . . Petitioner shall, within ten days of the date of this order, inform this Court whether he wishes to proceed <u>pro se</u> or continue with Ms. Shurling as counsel. If no response is received within that time period, Ms. Shurling will continue to be designated as counsel of record for petitioner.

(Dkt. No. 1-1 at 83-85 of 203.)

Ms. Shurling filed the Petition for Writ of Certiorari on February 22, 2011. (Dkt. No. 45-7.) It appears, therefore, that instead of proceeding *pro se*, Petitioner elected to proceed with Ms. Shurling representing him.

Petitioner is entitled to no relief on Ground Fifteen. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. §

2254(i); see also Martinez, 132 S. Ct. at 1320 ("[W]hile § 2254(i) precludes Martinez from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief,' it does not stop Martinez from using it to establish 'cause.'" (quoting Holland v. Florida, 130 S. Ct. 2549, 2563 (2010))). Furthermore, assuming an actual conflict of interest existed, Petitioner has not shown that it adversely affected counsel's performance. See Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). The documents submitted by Petitioner instead reveal that Ms. Shurling was contemplative in the issues she raised in the Petition for Writ of Certiorari. The South Carolina Supreme Court gave Petitioner the option of proceeding *pro se*, but he elected to proceed with Ms. Shurling. Petitioner is entitled to no relief on this ground. The undersigned therefore recommends granting summary judgment to Respondent on Ground Fifteen.

### F. Ground Sixteen

In Ground Sixteen, Petitioner contends that the trial court sentenced him "to a sentence exceeding the maximum authorized by law, denying due process and fundamental fairness." Petitioner further states,

> The Petitioner was sentenced to life without parole via a prior most serious which was too remote in time and over ten years old and violating recidivist statute, and the separation of powers doctrine S.C. Code Ann. 16-1-60 and S.C. Code Ann. 24-21-640, as the prior used assault and battery with intent to kill was not classified at the time.

(Dkt. No. 1.)

Petitioner was sentenced to life without parole pursuant to South Carolina Code § 17-25-45(A). See State v. Rogers, 361 S.C. 178, 187, 603 S.E.2d 910, 915 (Ct. App. 2004). South Carolina Code Section 17-25-45(A) states, in relevant part,

> [U]pon a conviction for a most serious offense as defined by this section, a person must be sentenced to a term of imprisonment for life without the possibility of parole if that person has . . . one or more prior convictions for . . . a most serious offense.

25

S.C. CODE ANN. § 17-25-45(A)(1). To the extent Petitioner's claim in Ground Sixteen is based on an alleged error of state law, that claim is not cognizable on habeas review. See Estelle v. McGuire, 502 U.S. 62, 67 (1991); see also 28 U.S.C. § 2254(a). Furthermore, the claim Petitioner raises herein is not the same claim that he raised on direct appeal. On appeal, Petitioner argued the "lower court erred in sentencing appellant to life without parole via a prior most serious offense which was too remote in time." (R. at 933.) Petitioner argued the previous conviction was too remote, but he did not argue it exceeded the maximum authorized by law. Accordingly, any argument in the instant case that the sentence exceeded the maximum authorized by law is barred. See Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) ("In order to avoid procedural default, the 'substance' of [the petitioner's] claim must have been 'fairly presented' in state court." (quoting Townes v. Murray, 68 F.3d 840, 846 (4th Cir. 1995))); see also Kornahrens v. Evatt, 66 F.3d 1350, 1361-62 (4th Cir. 1995).[3] To the extent he argues the previous conviction is too remote to be considered, the Court of Appeals of South Carolina rejected that argument on state law grounds. And to the extent he argues the sentence is unconstitutional, he has not shown the state court's determination of the issue is contrary to, or an unreasonable application of, clearly established federal law. As such, Petitioner is not entitled to relief on Ground Sixteen, and the undersigned recommends granting summary judgment to Respondent on this ground.

### G. Ground Seventeen

In Ground Seventeen, Petitioner complains that the trial court erred "in sentencing the petitioner to assault and battery with intent where the lower court lacked subject matter

---

[3]Such argument is also without merit. See Phillips v. State, 331 S.C. 482, 504 S.E.2d 111 (1998) (no *ex post facto* violation for legislature to enhance punishment for later offense based on prior conviction, even though enhancement provision was not in effect at time of prior offense).

jurisdiction to try defendant for assault and battery with intent to kill." (Dkt. No. 1.) Petitioner states that he was indicted for assault with intent to kill, but at trial (and without objection), the "solicitor amended the indictment by adding the words 'and battery,' changing the indictment to assault and battery with intent to kill without presentment by the grand jury . . . . " (Id.)

Any allegation that the trial court lacked subject matter jurisdiction is not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."); see also Wright v. Angelone, 151 F.3d 151, 158 (4th Cir. 1998) (holding jurisdiction is a matter of state law); Von Longmore v. South Carolina, No. C.A. 9:05-CV-2112-MBS, 2006 WL 2827416, at *6 (D.S.C. Sept. 27, 2006) ("Petitioner is not entitled to federal habeas relief because the subject matter jurisdiction of a state trial court is a state law issue."). Furthermore, the issue was not raised on direct appeal or in the first PCR action, so the issue is procedurally barred. Respondent is entitled to summary judgment on Ground Seventeen.

### H. Ground Eighteen

In this claim for relief, Petitioner contends that the lower court erred "by denying the petitioner the right to a jury hearing the evidence to his L.W.O.P. sentence denying petitioner due process and fundamental fairness." (Dkt. No. 1.) It does not appear that Petitioner raised this issue on direct appeal or in his PCR action. Accordingly, the issue is procedurally barred. However, there was no Apprendi error in Petitioner's case. In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Of course, in the instant case, it was a prior conviction that subjected Petitioner to South Carolina Code § 17-25-45, so Apprendi is not implicated. See James v. United States, 550 U.S. 192,

27

213-14 (2007). The undersigned recommends granting summary judgment to Respondent on Ground Eighteen.

### I. Ground Nineteen

Petitioner claims that the trial court erred by denying his motion for discovery; he claims that his previous trial counsel filed a motion for discovery "which the State failed to provide, and trial counsel failed to compel[,] denying [him] due process and fundamental fairness." (Dkt. No. 1.) Petitioner did not raise this issue on direct appeal or in his PCR proceedings; it is, therefore, procedurally barred.

### J. Ground Twenty One

Petitioner complains that he was denied the "right to be fully heard." (Dkt. No. 1.) He states that an "affidavit was submitted and filed with the [South Carolina] Supreme Court with newly discovered evidence to be fully heard to properly exhaust his remedies because none of his appointed counsel would properly argue the issues or preserve them for appellate review." (Dkt. No. 1.)

Ground Twenty One is unclear. Petitioner did submit a document entitled "Affidavit" with his habeas petition; the document was dated October 21, 2011, and addressed to the Justices of the South Carolina Supreme Court. (See Dkt. No. 1-1 at 135-39 of 203.) This document references the SLED results that, according to Petitioner, "clearly support[ his] innocence." (Dkt. No. 1-1 at 136 of 203.) He again complains about his blood being drawn and states that one of his previous attorneys, David Shea, told Petitioner that he would file a motion to suppress. (Dkt. No. 1-1 at 135-36 of 203.) Petitioner states that he told trial counsel "about [his] alibi witnesses in which [trial counsel] failed to even try to locate." (Dkt. No. 1-1 at 136 of 203.) He complains that the victim's sweater was returned to the victim, and that he was indicted for "assault with intent to kill," not "assault and battery with intent to kill." (Dkt. No. 1-1 at 137-38 of 203.)

28

It appears that Petitioner raised these issues in his 2010 application for post-conviction relief. (See Dkt. No. 45-14.) The state court dismissed this PCR application as successive and as time-barred. (See Dkt. No. 45-16; Dkt. No. 45-18.) Accordingly, Petitioner cannot bring the claim set forth in Ground Twenty One in the instant habeas action. See Matthews v. Evatt, 105 F.3d 907, 915-16 (4th Cir. 1997), overruled on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011)); see also Bailey v. Bazzle, 628 F. Supp. 2d 651, 656 (D.S.C. Sept. 30, 2008) (citing Smith v. Murray, 477 U.S. 527, 533 (1986)).

### K. Grounds Twenty Two and Twenty Three

In Grounds 22 and 23, Petitioner raises a claim of actual innocence. He complains that trial counsel and the solicitor "suppressed discovery of SLED's DNA results" whereby SLED found that "the petitioner's DNA did not match in the case . . . ." (Dkt. No. 1.) Petitioner attached the SLED report that he contends supports his claim of actual innocence. (See Dkt. No. 1-1 at 140-42 of 203.) According to the report, items 10.1.1 and 3.5 contained human blood, but the blood was an "[i]nsufficient amount for further serological or RFLP DNA analysis." (Dkt. No. 1-1 at 141 of 203.) The report further indicates that while DNA was obtained from items 3.2, 3.3, and 3.4, the DNA in those three items did not meet either of the standards; in other words, the DNA did not match that of the victim or the Petitioner. (Dkt. No. 1-1 at 142 of 203.) Petitioner contends this evidence was "suppressed" by trial counsel and by the solicitor, but the testimony of David McClure at Petitioner's trial reveals otherwise:

> Q. Now, let me ask you specifically, did you analyze the stains from the striped shirt using R.F.L.P.?
>
> A. Three of the stains from the striped shirt were of sufficient size for R.F.L.P. There was one stain that was not.

Q. When you analyzed the three stains that were big enough for R.F.L.P., were you able to obtain any matches?

A. **No. The three stains from the R.F.L.P. patterns developed from those items did not match either of the standards that were submitted in the case.**

Q. **So it wasn't Heyward Rogers' blood?**

A. **No, it was not.**

Q. **And it wasn't [the victim's] blood?**

A. **No, it was not.**

. . . .

Q. The three stains that were big enough were not–were blood that was not related to any parties in this case?

A. Any of the standards that were submitted to us, correct.

(Dkt. No. 42-6 at 103-05 of 142; R. at 723-25 (emphasis added).)

On cross examination of David McClure, Petitioner's counsel highlighted that no semen was found on any of the swabs taken from the victim. (Dkt. No. 42-6 at 123 of 142; R. at 743.) Petitioner's counsel questioned McClure on the three cuttings from the white shirt; McClure again testified that the DNA on those three cuttings did not match the Petitioner's DNA. (Dkt. No. 42-6 at 123 of 142; R. at 743.)

Subsequent testimony from SLED agent Gray Amick revealed that a different kind of DNA analysis–called P.C.R. analysis–was performed on a cutting from the same shirt as the three samples discussed above and a cutting from a sweater. (R. at 764-65.) When Amick was asked about the results on item 3.5 (the shirt), Amick stated,

The D.N.A. profile developed from item 3.5 matches Heyward Rogers. The probability of selecting an unrelated individual at random from the population matching item 3.5 is one in 220 billion Caucasians and one in 76 billion blacks.

30

(R. at 766.) The solicitor also asked Agent Amick about item 10.1.1, a cutting from the sweater. (R. at 767.) Amick testified that the D.N.A. profile developed from item 10.1.1 was "consistent with being a mixture of [the victim] and Heyward Rogers." (Id.) Amick indicated that the victim was the "major contributor" on item 10.1.1, while Petitioner was the "minor contributor." (R. at 767-68.) Amick stated,

> The D.N.A. profile representing the minor contributor from item 10.1.1 matches the D.N.A. profile developed from Heyward Rogers.
> The probability of selecting an unrelated individual at random from the population matching the minor contributor of item 10.1.1 is one in 10 billion Caucasians and one in 490 million blacks.

(R. at 768.)

Contrary to Petitioner's assertion, it is clear from a review of the trial record that the evidence to which Petitioner points was not suppressed; it was, instead, discussed at trial. Petitioner's counsel–in his closing argument–noted that there was a "bunch of blood" on the white shirt that did not belong to Petitioner–"[i]t was somebody else's." (R. at 848.) Much like in Ground Twenty One, it appears that Petitioner attempted to raise these issues in his 2010 PCR application. (See Dkt. No. 45-14.) As noted above, this PCR application was dismissed as successive and time-barred. (See Dkt. No. 45-16; Dkt. No. 45-18.) Just as in Ground Twenty One, Petitioner cannot now bring the claims set forth in Ground Twenty Two and Ground Twenty Three in this habeas action. See Matthews, 105 F.3d at 915-16.

To the extent Petitioner argues that these two claims–or any others in this habeas petition–should be considered because he is actually innocent, the undersigned disagrees.[4]

---

[4]It is possible that Petitioner intends to assert a freestanding "actual innocence" claim. To the extent he does so, such a claim must be rejected. See Buckner v. Polk, 453 F.3d 195, 200 n.4 (4th Cir. 2006) ("Given the Court's indication that free-standing actual innocence claims, if cognizable at all on federal habeas review, would be subject to even higher standards of proof than their gateway counterparts, we cannot conclude that the new evidence's speculative effect on the jury's sentencing recommendation provides a basis for habeas relief." (citing Herrera v. Collins, 506 U.S. 390, 417 (1993))).

"[A]ctual innocence for the purposes of <u>Schlup</u> [<u>v. Delo</u>, 513 U.S. 298 (1995),] is a procedural mechanism rather than a substantive claim." <u>Teleguz v. Pearson</u>, 689 F.3d 322, 327 (4th Cir. 2012).

> In other words, although a petitioner claims actual innocence for the purposes of asserting a <u>Schlup</u> claim, this innocence claim "does not by itself provide a basis for relief. Instead, his claim for relief relies critically on the validity" of his procedurally defaulted claims. <u>Coleman v. Hardy</u>, 628 F.3d 314, 318 (7th Cir.2010) (quotation marks omitted).

<u>Teleguz</u>, 689 F.2d at 328. In order to raise a <u>Schlup</u> gateway claim, the claim "must be supported by 'new reliable evidence.'" <u>Id</u>. (quoting <u>Schlup</u>, 513 U.S. at 324). Petitioner has not pointed out new evidence in the case *sub judice*—as noted above, the evidence to which Petitioner points was readily available and presented to the jury at his first trial. As such, any attempt to excuse the procedural default fails. <u>See Sparrow v. Director, Dept. of Corrs.</u>, 439 F. Supp. 2d 584, 589 (E.D. Va. 2006). The undersigned therefore recommends granting summary judgment to Respondent on Grounds Twenty Two and Twenty Three.

## CONCLUSION

It is therefore RECOMMENDED, for the foregoing reasons, Respondent's Motion for Summary Judgment (Dkt. No. 43) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. The undersigned further RECOMMENDS that a certificate of appealability be DENIED.[5] It is further recommended that the remaining motions (Dkt. No. 31, Dkt. No. 51, and Dkt. No. 53) be DISMISSED as moot.

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge

April 4, 2013
Charleston, South Carolina

**The Petitioner's attention is directed to the important notice on the next page.**

---

[5]      Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).